case number 196010 United States of America versus Maurice Burks arguments not to exceed 15 minutes per side. Mr. Vandevender, you may proceed for the appellant. Thank you, your honor. May it please the court, Cecil Vandevender on behalf of the United States and I reserve three minutes for rebuttal. I'd like to start with the issue of remand since it was raised in the court's July 22nd briefing order. And when this issue of the non-disclosure of the two ROIs first arose, the government proposed to defense counsel that the parties jointly move to remand the case to allow for further factual development of the record and allow the district court to make any relevant findings before it then comes back to this court. But there have been a couple of developments then that I think changed the remand analysis. In particular, after the defendant disagreed with our proposal to jointly remand, filed a motion for a new trial as to counts one and two, and the extensive briefing surrounding that did allow for further development of the record. And then the district court, when it denied the new trial motion as to counts one and two, specifically said that it was doing so even though it was uncertain of its own jurisdiction to aid in the appeal and avoid the possibility, possible need for a remand. What the court said in that order was essentially, although this non-disclosure further confirms its view about the so-called snitches that the government called a trial, it didn't find that it was an independently sufficient basis for a new trial. And so at this point, I think our recommendation, Your Honor, would be essentially resolve the appeal as it's teed up now on the basis of the grounds on which the court granted the new trial, remand to reinstate the jury's verdict on those counts if it agrees with our analysis, and then if necessary, allow for further litigation in the district court on the disclosure issue if necessary. Can I just add that? Counsel, forgive me for interrupting, but are we, is it appropriate given all the briefing and record development at the trial level, is it appropriate for us to consider the Brady claim? In other words, or at least the Brady evidence? I mean, are we allowed to consider the Brady evidence or what? So I think there is enough development if the court wanted to do so to evaluate the materiality of this undisclosed ROI. Our view, of course, is that this is a very discreet issue, a one-time equivocation on the caliber of the gun. And so there's enough there for the court to find that it is not material. So the courts could certainly do so, but the court could also leave that open because there will be an additional appeal by the defendant almost certainly after entry of a final judgment, and the court could take that issue up then if necessary. I don't, I mean, what would, what gets frustrating is the idea that we resolve something in front of us, it goes back, and then we have a Brady claim, and the district court is saying what seemed to be opposite things. On the one hand, this evidence supports what it did, but on the other hand, it doesn't independently support any trial. I don't know how that, I don't get that. I mean, if the court thinks it's relevant to the new trial motion, I don't understand how we're not supposed to review the whole thing at once. You don't review new trial motions over and over again. That's not how this works. So I'm stuck with why we're not sending it back. And if the court just wants to say, I think there was a Brady violation, it adds a little bit to my new trial decision. Great. Then we review that. But I, it seems very frustrating to withdraw, review a new trial decision, and then have this live Brady issue. I don't understand that. Well, I certainly share the court's frustration in the sense that we've tried a few different times to try and limit the number of times this case comes before the Court of Appeal, first when the new trial order was issued, and then when this Brady issue first arose. So I do think, in context, the way to read the district court's order is, this is not an independently sufficient basis, further kind of confirms my skepticism of the credibility of Damian Dowling. And so the court can say, essentially the court abused, the district court abused its discretion in granting the new trial for the reasons given, given that it is not found that the Brady issue could be independently sufficient basis. We therefore reverse a reinstatement of the jury's verdict. Okay, but how about, can I ask the government this position? Are you okay with our not deciding whether there was a Brady violation, but accounting for that evidence and deciding whether a new trial should be granted? In other words, we're not, in other words, for the sake of argument, we would assume this was a violation without saying it was, but consider that evidence in deciding whether it was appropriate to grant a new trial motion. Is the government okay with our doing that? Your Honor, I mean, I do think they are- Just yes or no, yes or no. Yes, Your Honor, I do think that the court certainly has discretion if it feels the record is sufficiently developed to factor that in as part of its analysis. Well, I mean, counsel, earlier you said something like, I thought that if we ruled in your favor, that is no new trial, then it would go back to the judge and he could take into account this Brady argument. Would that be based on another new trial motion or did you mean it would be the subject of a habeas? I think, Your Honor, it would be potentially the subject of a new trial motion. Berks, when he moved in the district court for a new trial, he moved as to counts one and two, not as to the Malcolm Wright counts. And so the district court's order denying that, I think, went out of its way to address the Malcolm Wright counts to avoid the need for remand. And our read of that order in context is, I don't find this to be independently sufficient. So frankly, I don't think there would need to be further litigation after remand, but if the court was uncertain about exactly if the district court had said everything it possibly could, I'd like to turn to the merits. In order to ensure that Rule 33 remains an extraordinary and disfavored remedy, this court must carefully scrutinize the reasons given. It must reverse if it finds either that the district court failed to appropriate deference to the role of the jury in our system of justice or otherwise makes clear errors of fact along the judgment. And we would submit that under that standard, reversal is warranted here. And there are two errors that I want to highlight because of both their clarity and their materiality, those being the district court's treatment of Christine Gaskin's testimony and the district court's treatment of Ronnie Daniels' grand jury testimony. So with regard to Ms. Gaskin, the district court adopted a reading of her testimony that had not been presented to the jury, in which she purportedly identified some alternate perpetrator other than Maurice Burks, namely this medium height person she saw standing over in the C-rays as the perpetrator. Now, I think that conclusion is clear error, largely because she was asked directly, did you observe who shot Malcolm Wright? She said explicitly, I did not. I think the conclusion is also that there was significant tension to the unrebutted testimony of the medical examiner, that Malcolm Wright was shot at distant range, meaning at least five or six feet away, which again, kind of undercuts any suggestion that the person that Ms. Gaskin was talking about was the shooter. And the district court never even addressed those parts of the work. Gaskin identified this medium height person, Burks is 604, therefore there's this clear contradiction between her testimony and that of the other witnesses. According to Ronnie Daniels, on one hand the district court acknowledged that prior grand jury testimony is admissible as both conclusion and substantive evidence, but on the other hand, the court completely disregarded the jury's ability to rely on Ronnie Daniels' grand jury testimony, on the grounds that the head of jury did not observe his demeanor and judge's credibility at the time that he testified in front of the grand jury. And if that's a valid basis for setting aside prior grand jury testimony, that effectively writes rule 801-D1A into existence, and we would submit constitutes legal error. And a highly material one, because what Daniels testified to in front of the grand jury was, he was outside of C-Rays immediately before the murder, he saw the gangster cycles assemble, he saw Maurice Burks arrive after the rest of them had assembled, connecting the phone records to the chronology, heard Martin Chardon order the gangster cycles into C-Rays to exact revenge on the Bloods, saw a stream of people leave the club, saw Maurice Burks leave after the others had left, and then heard him confess to the murder later. So, setting aside all of that testimony. But the court was troubled that this alleged confession didn't match any of the objective facts, right? Supposedly he shot him in the head, and supposedly it was the back door, and that just didn't match the facts on the ground. So, the way that Dan Dallin described the confession cave, now this is not Ronnie Daniels' testimony, was that Burks said, basically Burks pulls up a video from local news in which security guard at C-Rays is kind of out on this back deck talking about how scary and dangerous it was there. And what Burks says to Dallin, Hardison, and Darden is, I can't believe he made it all the way out there. I shot him in the head and he made it all the way there. So, I think one error in the court's analysis was, well, clearly Malcolm Wright was not shot in the head, he was shot in the abdomen. And the court equates that disconnect as essentially no different from Burks taking credit for the murder he didn't commit. But I think the testimony makes that. Counsel, just so I'm clear, did the jury hear about that disconnect, as you say, and it was mentioned or argued to them or pointed out to them? Yes, Your Honor. And so, the district court's view that even though it's true that Maurice Burks could have embellished the details of the shooting by saying I shot him in the head when he really shot him in the stomach, that's no different from him falsely taking credit for a murder he didn't commit. I think it's important to understand that against the backdrop of all the testimony given context for how the gangster cycles operate. Most importantly, a person gains status within the gang by murdering a rival gang member. And so, it's completely implausible that Maurice Burks would claim to have murdered someone that he would say shot him in the head when, in fact, he shot him in the stomach. Perhaps he sincerely believed that he shot him in the head. It's hard to know. So, Your Honor, I see that my time is nearly up. But what I want to emphasize before rebuttal is simply it may well be the case that the district court personally retained some reasonable doubt. I thought that the jury, that a different verdict would have been more reasonable. But that's not the Rule 33 standard. The Rule 33 standard is evidence must heavily preponderate against the jury's verdict. Okay, thank you, Mr. Vandivander. Mr. Bailey. Good morning, Your Honor. May it please the court, John Bailey on behalf of Maurice Burks. The Rule 33 interest of justice standard. Counsel, could you help us with the remand question first? I'm puzzled why you objected to the remand before. It seemed like it would potentially help strengthen your hand on upholding the new trial order. So, I'm not sure. I just don't understand why you wouldn't have supported a remand before. Yes, Your Honor. As the government has indicated, there was a conference call between myself and two government attorneys on this case where we discussed the possibility of a remand. And at that time, I asked one of the attorneys representing the government if it was their position that this new evidence of the undisclosed Brady material would, in fact, cause the district court to reverse its decision, granting Mr. Burks a new trial on the murder counts. And the attorney for the government said no, that wasn't their position at all. They thought that if anything, it strengthened the district court's decision granting the new trial. Given that, I didn't see any reason that it was necessary to send the case back to the district court to consider that new evidence. Now, I understand. Do you have the same view today? Well, I understand that it would give perhaps the district court an opportunity to further clarify and further expound upon its reasons for granting a new trial on the murder counts in this case. And maybe that's desirable. And if that's so, that's fine. I guess our position was, the district court wrote a very thorough and thoughtful opinion in partially granting Mr. Burks a new trial motion. And that was only going to get stronger given the government's failure to provide Brady material on an important issue at the trial regarding its main witness, the witness that it kept on stand for three days during this trial. So I will say, I do take issue with something the government argued, that the district court found that the failure to provide the Brady information regarding Dallon's testimony was not an independent reason to grant the motion for new trial on the murder counts. That wasn't the question before the district court and our second motion for new trial. The district court did rule that it was not an independent basis for granting a new trial on counts one and two. The drug trafficking counts, which obviously remain in effect to this day. So I don't think that the court in any way said that it would not find that the withholding of that information was not a further reason to grant the motion for new trial on the murder counts. I think it said that it bolstered or further supported the court's reasons already expounded upon in its very detailed opinion and order grant, partially granting the motion for new trial. What's your reaction to the point I raised to the government that in considering whether the new trial motion should have been granted, we would be allowed to consider the evidence underlying the alleged Brady violation and assume for the sake of argument, it was a violation and that the evidence should have been considered, but without obviously resolving whether it was a Brady violation, but be able to I agree with the government that the court has before it enough evidence that it can make that determination. I don't know that that's an evidence squarely presented so far. And I don't, I don't think it's been argued. It certainly hasn't been thoroughly argued one way or another. For example, if there's a question about whether it was a Brady violation, obviously our position is that there's no question at all that it was a Brady violation and a very serious one. I'm making the point. We would assume for the sake of argument, it was a violation. Therefore, the evidence can be considered in terms of trial. That's all I'm saying. I agree with your honor. Why don't you shift to the merits? You know, one, one question I have about the Daniels. It's hard for me to understand about the discounting of the Daniels grand jury testimonies. This, this is just not an unusual sequence to have a situation where someone testifies in the grand jury, unwilling to testify live and the grand jury testimonies used. I, I feel like this happens. It's just not an unusual circumstance. And, you know, I don't know what it is that judges know the jurors don't know when it comes to assessing whether the grand jury testimony should be believable in that setting. Well, the judge obviously considered not only what Ronnie Daniels said, but how he said it. And Ronnie Daniels came into court and did not want to be there, did not want to answer any questions, was overtly hostile to anyone asking him questions and was held in contempt and came back. And even after that, did not substantively answer any questions, only said, I don't know, I don't remember. Now he did say in response to the question on cross-examination, just because something is in a grand jury transcript doesn't mean it's true, does it? And he very emphatically said, no, it does not. So he effectively disavowed his grand jury testimony in that statement. I think that the district court had the opportunity to fully consider not only what Mr. Daniels said, but how he said it and found him very specifically found him to lack all credibility. Now the government argues that the fact that Mr. Daniels has since trial admitted to committing perjury somehow bolsters his testimony. I don't understand that. He's admitted apparently that he doesn't mind lying under oath, and I don't see how that bolsters either his testimony at trial or his testimony before the grand jury. Now the jury had that before him also, didn't it? In the sense that the cross-examination question you just gave would tell any reasonable person that this guy does lie on occasion. And when he said, just because you said it in the grand jury doesn't mean it's true, is a pretty good admission of lying, isn't it? Well, he admitted that he lied and he hesitated, he hemmed and hauled, and the trial judge took all that into consideration. But the jury had the ability to do that also, didn't it? The defense question is always, are you lying now or were you lying then? And a lot of times juries say you were lying now, and sometimes they decide you were lying then. My response to that, your honor, counsel, why is the judge in a better position to make that judgment than the jury was? The judge has sat through hundreds of trials and has heard testimony and has observed witnesses and has much more experience with that than any juror on any trial. And the Rule 33 interest of justice standard does not mean, because it cannot mean, just rubber stamping a jury's verdict. If that were true, there'd be no reason for Rule 33. Now I understand that this court has repeatedly said that it's only to be granted in extraordinary circumstances. The district court recognized that standard, cited that standard, and utilized that standard. The government wants to say, and they did say repeatedly, that the discrepancies in the government's case were, I think the words they used over and over, were routine and unremarkable. They used those two phrases over and over. The district court didn't agree with that. The district court observed the witnesses and the district court, unlike the government, not acting as an advocate, considered that testimony and found it not credible. Help me out with this point. Let's pretend there's just no other witness than Bailey. It's just grand jury testimony. It's when were you lying or not. I just would have thought that by itself was problematic. Forget everything else. I just would have thought if someone said in grand jury testimony under oath, this is what happened, and it by itself provides enough, beyond a reasonable doubt, evidence of guilt, the fact that you decide not to stand by that testimony, the fact you decide to say what I said in grand jury doesn't mean it's true. Everyone gets the realistic dynamic going on here, and I just would have thought by itself that is always enough to sustain the verdict. I disagree that Ronnie Daniel's testimony by itself would be enough to sustain the verdict. I don't think. Give me a good case. What's a good case that will enlighten me on that? Well, I don't have a case that I can cite to the court right now, but I think if your honor looks at the briefing in this case, the government is relying on Daniel Dallin. That was their case. I mean, Ronnie Daniel's and Deseret Slick Ford also testified, but their testimony was inherently incredible. The government didn't argue it more than a half a second at trial, and they've barely spilled any ink on it in the pleadings before this court. I mean, their case rises or falls on Daniel Dallin. I mean, Ronnie Daniel's, they're raising as a legal issue about his grand jury testimony, but his testimony didn't get the government where it wanted to go in this trial, didn't even come close to doing that. Even if he testified word for word, how he testified before the grand jury. Remind me what you consider to be the gaps in the Daniel's testimony. Well, the Daniel's testimony, one, was very vague about what he saw and what he didn't see outside of Sea Rays that night, and most importantly, he didn't see anything in Sea Rays. He didn't go inside Sea Rays. He didn't see Malcolm Wright being shot. He has no idea what happened in there. Did he talk to Burks? He claimed in the grand jury that he talked to Burks. I don't know that he agreed that he did that when he testified at trial. He said he didn't remember. Right, but I'm just making the point. Well, anyway, I mean, I have made the point. I don't want to belabor it. Well, he was outside, right, and then they were waiting for him, and then Burks came out. According to Ronnie Daniels, a number of gangster disciples went inside of Sea Rays, and he has no idea what happened inside Sea Rays that night at all. Who does know what happened inside Sea Rays was Christine Gaskins, and with all due respect to government counsel, saying that she didn't identify the person who shot her boyfriend, Malcolm Wright, is a very strained view of the evidence. She was asked specifically by the government at trial who was in the room, three people, this unidentified person, Christine Gaskins and Malcolm Wright. Was there anybody else in the room? No, just the three of you. Yes, and that's when the gunshot went off. Yes, Christine Gaskins didn't see the gun being shot. Maybe it was because the shooter's body blocked her from seeing that, and she was very honest. She didn't say she saw something that she didn't see, but this wasn't the Kennedy assassination. Sea Rays doesn't have a grassy knoll. I mean, these three people were the only three people in the room. Nobody else could have shot Malcolm Wright. It wasn't Christine Gaskins. Malcolm Wright didn't shoot himself. This person shot Malcolm Wright, and this person was not Maurice Burks. There's no doubt about that whatsoever. And what is our standard of review? I'm sorry, Your Honor. What is our standard of review? Deference to the trial court because they had the opportunity to listen to and view the witnesses. I think this court owes a duty of respect and deference to the trial court's decision, particularly because it was such a very thorough opinion and went over in meticulous detail the evidence that was presented by the government and what was wrong with the evidence that was presented by the government. Counsel, let's say if this is upheld, this was a trial with several other defendants, right? Yes, Your Honor. And there were no new trial motions granted as the other defendants, correct? No, and not as to counts one and two by Mr. Burks. The judge was very specific. So if there is a new trial, are there complications with the new trial without the other defendants still in the case? Or are you going to say that makes it easier? Makes it much easier. I mean, there were five young African-American men who were sitting against the back wall of the courtroom during this trial. And the jury heard tons and tons and tons of evidence about one of the co-defendants in this case, Marcus Darden, and also heard tons of evidence about a defendant who wasn't on trial, Brandon Hardison, who committed a brutal, horrible double murder. They heard days of testimony about that. Yeah, your red light's on. If there's anything that you need to mention that's about this case, go for it. I apologize, Your Honor. I didn't see either the yellow flag or the red flag. I apologize for my technological incompetence. Okay. All right. Mr. Vandiver. Thank you, Your Honor. Let me circle back to Ronnie Daniels because I disagree with my friend on the other side that he was some sort of kind of peripheral witness that really doesn't advance the ball here. As the court suggested, I think that if you just look at Ronnie Daniels' testimony and combine it with physical evidence and some of the kind of unrebutted evidence from Daniel Dowland particularly, there's more than enough to sustain the jury's verdict here. And neither the district court nor Berks has really ever pointed out any discrepancies, impossibilities, holes in Daniels' jury testimony. His narrative of events is straightforward. It's corroborated by physical evidence and shows that he heard the gangster cycles go in, serious to commit murder, saw Berks come out after the initial wave and later heard him confess to committing murder. I mean, that's very material evidence of guilt. And, you know, it might be a different case if the district court has hung its hat on some particular inconsistency or impossibility at the heart of Daniels' grand jury testimony. But what the district court said, the jury didn't have a way to see him when he confessed. Again, we think that's legal error that on its own warrants a reversal here. Can you address a little bit the argument in effect that, well, how could you ever grant a new trial if you simply say that the judge can't be a super juror and decide that people are lying when the jury decides they didn't? Are there other grounds that a judge could use other than simply his perception? Yes, your honor. So, you know, we don't dispute that part of the rule 29, excuse me, the rule 33 analysis is the judge sits, evaluates credibility, reweighs evidence. And this would be a very different case if Christine Gaskin had got on the stand and said, I got a good look at the person who shot Malcolm Wright and he was no more than five foot nine. Or if Daniel Dallin had said, Maurice Burks confessed to me in the cave and he told me that he stabbed Malcolm Wright to death, right? There are plenty of examples you can think of where there really would be, there would be evidence in the record that then probably preponderates against the jury's verdict. But we don't have that here. We have a combination of routine impeachment evidence and legal and factual errors that constitute an abuse of discretion and argue warrant reversal to reinstate the jury's verdict. And what is your take on the only three people in the room, Gaskin's evidence, and I presume you argued something to the jury against that? Well, that argument was never made to the jury. You know, if Christine Gaskin's testimony had been what Burks now says that it is, that she identified this alternate perpetrator, I think you could safely assume that that would have been front and center of the defense summation. But everyone took it at trial that what she said was the express answer she observed was shot Malcolm Wright, and she said, I did not. So that was how that was put to the jury. And clearly later that this kind of inferential reading regarding the three people has come up. Okay, thank you to both of you. We appreciate your briefs and oral arguments. The case will be submitted and the clerk may call it.